DLD-298                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1868
_____

MARC ANTWAIN X. RIVERS MUHAMMAD, SR.,

Appellant

v.

CLEATRICE X. DEMPSEY; ASYIA RIGSBYE; YORRII SASKA HARDING;
LUZERNE COUNTY COURT OF COMMON PLEAS ORPHANS COURT;
SUPERIOR COURT OF PENNSYLVANIA; SUPREME COURT PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-11-cv-00350)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted for Possible Summary Action Pursuant to
Third Circuit LAR 27.4 and I.O.P. 10.6
June 27, 2013

Before: AMBRO, SMITH and CHAGARES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 23, 2013)
_____

OPINION
_____

PER CURIAM

Marc Antwain X. Rivers Muhammad, Sr., proceeding pro se, appeals from the District Court's orders dismissing his complaint and granting Yorrii Saska Harden's motion for reconsideration.[1] For the reasons set forth below, we will summarily affirm.

I.

Muhammad is Naseem Johnson's biological father. In 2000, Cleatrice Dempsey, who was married to Muhammad at the time, was granted custody of Naseem, though she is not his biological mother. Muhammad filed for divorce in 2001 after numerous physical altercations with Dempsey. When Dempsey found out that Muhammad filed for divorce, she did not return to their home. Instead, she called Harden, a case worker with Luzerne County Children and Youth Services. According to Muhammad, Harden helped Dempsey kidnap Naseem by sending a cab to pick her up and giving her advice. Muhammad called the police, but was told nothing could be done because Dempsey had court-ordered custody of Naseem.

Muhammad was imprisoned from August, 2001, until February, 2003, on simple assault charges unrelated to Dempsey. During that time, their divorce was finalized and his visitation request was denied. After he was released, he tried to have criminal charges filed against Dempsey for kidnapping Naseem, but the appropriate authorities declined to prosecute. After Muhammad threatened to kill Dempsey for kidnapping Naseem,

---

[1] Ms. Harden is incorrectly named in the caption as Yorrii Saska Harding.

Muhammad returned to prison for making terroristic threats. While there, he unsuccessfully challenged the custody order.

Upon his release from prison, Muhammad filed a petition for modification of the custody order. According to Muhammad, at the May 11, 2009, hearing on that petition, Harden falsely testified that in 2001, Muhammad called 911 and told the police that, he was going to kill Naseem because he did not think he was his biological father. Asyia Rigsbye, Dempsey's friend, also lied and said that Muhammad threatened Dempsey and told her not to show her face in court. The judge awarded legal and physical custody of Naseem to Dempsey and granted Muhammad supervised visitation. Muhammad unsuccessfully appealed that order.

He then filed a complaint in the District Court, raising claims under 42 U.S.C. §§ 1983, 1985(2), 1985(3) and 1986. He alleged that the defendants engaged in a conspiracy to deprive him of his parental rights, to deprive him of due process, and to deprive him of equal protection under the law. He also alleged that the Pennsylvania courts had the power to prevent those deprivations but failed to do so. He sought custody of his son and prosecution of Dempsey for kidnapping.

The Magistrate Judge issued a report that recommended dismissing Muhammad's complaint pursuant to 28 U.S.C. § 1915(e)(2). The District Court adopted that recommendation in part and denied it in part, finding that all of the claims should be dismissed with prejudice except for Muhammad's civil conspiracy claim against

Dempsey and Harden.[2] Harden filed a motion for reconsideration, arguing that because all of Muhammad's underlying tort claims were dismissed, the civil conspiracy claim should also be dismissed. The District Court granted that motion and dismissed Muhammad's remaining claim. Muhammad timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a dismissal made pursuant to § 1915(e)(2)(B). Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). The District Court's decision on a motion for reconsideration is reviewed for abuse of discretion, though issues presenting a question of law are "subject to plenary review." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). We may summarily affirm the decision of the District Court if no substantial question is presented on appeal. 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

The District Court properly dismissed Muhammad's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).[3] The judicial defendants named in this case were immune from suit under the Eleventh Amendment, (D. Ct. Mem. Op., Dkt. No. 10, pp. 6-7.). See Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008); 42 Pa. Cons. Stat. § 8521(b) (Pennsylvania has not waived immunity). Muhammad's claims

---

[2] Judge A. Richard Caputo issued this decision, and the case was then transferred to Judge Malachy E. Mannion.
[3] While the District Court did not adopt the Magistrate Judge's recommendation to dismiss Muhammad's civil conspiracy claim, that claim was dismissed when the District Court's granted Harden's motion for reconsideration.

4

under § 1983 that he was entitled to relief because Harden, Dempsey and Rigsbye perjured themselves during the custody hearing were also properly dismissed, because they were immune from suit, (Dkt. No. 10, p. 7). See Briscoe v. LaHue, 460 U.S. 325, 334 (1983) ("[W]ith respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law . . . .").

The District Court also determined that Muhammad's claim under § 1983 that his rights were deprived by the 2001 kidnapping was barred by the applicable statute of limitations, which in this case was two years. See Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989). Because the alleged kidnapping took place in 2001, and Muhammad did not file his complaint until 2011, that claim was properly dismissed as time-barred. (Dkt. No. 10, p. 8.) The dismissal of Muhammad's claims under § 1985 was likewise appropriate, (Dkt. No. 10, pp. 8-9), because he did not allege the requisite class-based animus to sustain them.[4] See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997); Brawer v. Horowitz, 535 F.2d 830, 840 (3d. Cir. 1976). Finally, for all of the reasons given by the District Court, (Dkt. No. 10, pp. 9-10), we agree that it did not have jurisdiction to grant the relief Muhammad requested, namely, that Dempsey be prosecuted for kidnapping and that the state court custody order be modified.

---

[4] We also note that, absent a valid § 1985(3) claim, Muhammad's claim under § 1986 fails, as liability under that statute is predicated on actual knowledge of a § 1985 violation. See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) (transgressions of § 1986, by definition, depend on a preexisting violation of § 1985).

Nor did the District Court abuse its discretion in granting Harden's motion for reconsideration. (Dkt. Nos. 66, 67.) Muhammad's civil conspiracy claim was based upon his allegations of kidnapping and perjury, and those claims were dismissed with prejudice. A civil conspiracy claim requires a valid underlying tort claim, see Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003), and § 1983 does not provide an independent cause of action, see Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000). Because Muhammad's kidnapping and perjury claims were dismissed, it follows that his civil conspiracy claim failed as a matter of law for lack of an actionable underlying tort.

III.

There being no substantial question presented on appeal, we will summarily affirm the March 4, 2013, order of the District Court dismissing Muhammad's complaint.